IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH LEPORACE, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| N.Y. LIFE & ANNUNITY CORP., UNUM | : | NO. 11-2000 |
| GROUP CORP., & THE PAUL REVERE | : | |
| INSURANCE CO. | : | |
| Defendants | : | |

### MEMORANDUM RE: PROPOSED EXPERT TESTIMONY BY PLAINTIFF

**J. Baylson**                                                                                                          **February 26, 2014**

Defendants have filed a Motion to Exclude the Testimony of Mary E. Fuller, a proposed expert offered by plaintiff in support of plaintiff's claims of bad faith against defendants (ECF No. 52-10). One report by Ms. Fuller was attached as Exhibit H to plaintiff's Answer to Defendants' Motion for Summary Judgment (ECF No. 52-10), and a second was filed as an exhibit in Plaintiffs Response to Defendants' Motion for Summary Judgment (ECF No. 88-51), also while Defendants' Motion for Summary Judgment was pending. The Court notes that in its Order dated February 7, 2014, the Court denied Defendants' Motion for Summary Judgment but did not rely on the opinions submitted by Ms. Fuller in making this decision. (ECF No. 96).

By way of background, Ms. Fuller was previously an employee of defendant UNUM while it handled claims for defendant Paul Revere Life Insurance Company, and in her affidavits she states that she has worked in the field of disability insurance for seventeen years, and left the employment of the defendant after having a senior management position, in 2001. Since that time, she has served as an expert in a number of disability insurance claims. She asserts that she has testified in 72 depositions, 43 of which involved cases administered by defendants, and in ten trials which involved defendants. Plaintiff may be able to qualify Ms. Fuller as an expert on the

topic of industry standards insurers should follow or reasonable determination of disability benefits.

As the prior Orders of this Court will show, the Court has previously granted partial summary judgment to defendants as to plaintiff's claims before 2010. Therefore the upcoming trial of this case will only concern plaintiff's claims for defendants' conduct 2010 and forward.

The affidavit of Ms. Fuller does not specifically state to what extent she gave testimony based on defendants' policies and practices while she was still employed by defendants or thereafter.[1] Paragraphs 75-94 of the first report depend extensively on defendants' practices while she was still employed by defendants, ending in 2001, which are doubtfully relevant in this case unless plaintiff can establish these same policies and practices continued to 2010 and forward.

The Court further notes that a good deal of Ms. Fuller's opinions are based on two specific studies/reports. The first is described as the Multi-State Market Conduct Examination of 2003 ("Examination"), and the second is described as the Regulatory Settlement Agreement of November, 2004 ("RSA"). Although Ms. Fuller relies heavily on these two apparently separate items, she does not specifically show that she has any knowledge that these are relevant to the plaintiff's claims for the period 2010 to the present time.

The Examination appears to review past events. Without any evidence defendants' conduct described in the Evaluation continued to the present day, this evidence is merely propensity evidence of prior bad acts, and is not admissible under FRE 404(b)(1). Therefore, the

---

[1] The Court will require plaintiff's counsel to provide, by case citation and name of judge, etc., any court rulings dealing with Ms. Fuller's expert testimony about defendants after she ceased employment by defendants, that either admits or denies admissibility of her testimony in whole or in part. Pursuant to F.R.C.P. 26(a)(2)(B)(v), plaintiff should have already provided this information for the prior four years to defendant.

2

Court will be inclined to reject any reference to the Examination unless plaintiff can show the conduct found in the Examination continued through the 2010 forward period, with evidence other than defendants' conduct toward plaintiff.[2]

As to the RSA, to the extent that plaintiff can show that it establishes standards for future conduct by defendants, which applied as of 2010 forward, Ms. Fuller's testimony about it may be relevant as a benchmark against which the jury may measure what defendants did or should have done in investigating and determining plaintiff's claims for reinstatement of benefits.  Assuming that plaintiff meets this evidentiary threshold, Ms. Fuller may be allowed to give opinions, based on her review of defendants' practices with regard to defendants' 2010 and forward policies and practices and whether they were in accord with the RSA.

The Court further notes that many of Ms. Fuller's opinions in her reports are obviously medical in nature.  The Court will not allow Ms. Fuller to give opinions that express disagreement with medical opinions, since she is not a physician nor does she have any medical training.  The Court will likely exclude any opinions such as those stated in paragraphs 68-74 of the first affidavit because these concern medical diagnoses and medical opinions.

The Court will likely exclude opinions in paragraphs 32-64 of Ms. Fuller's initial report because they are almost exclusively concerning events prior to 2010.  The Court has previously noted that it may allow, subject to Federal Rule of Evidence 404(b), limited testimony by plaintiff as to defendants' pre-2010 conduct vis a vis plaintiff, principally to give Plaintiff an opportunity to prove motive and intent.  However, the Court doubts that expert opinions on this period would be proper evidence.

---

[2] Plaintiff must present evidence that the defendants' policies and/or practices that existed when Ms. Fuller was an employee before 2001 existed in the period 2010 and forward.

The second report's paragraphs are not numbered, and it is largely repetitive of the first report. Although the second report is more focused on the post-2010 period, it provides very little, factual basis for the opinions asserted. For example, the second report provides some factual basis for unfounded assertions made in the first report regarding defendants' potential financial benefit in delaying payment on plaintiff's claims. Fuller Second Decl. at 597- 616. But the following line, asserting defendants "clearly placed its financial interest, above that of the insured during the entire time his request for reinstatement and appeal was being investigated," Fuller Second Decl. at 618-20, is an inadmissible conclusion rather than an opinion supported by the facts recited.

Based on the Court's review of the reports and Ms. Fuller's depositions, exhibits, etc., the Court concludes that the expert reports fail to meet the standards for admissibility and do not "fit" the issues that will be the subject of the trial. Rule 702 requires the evidence "fits" the facts of the case so that it will aid the trier of fact. See In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742-43 (3d Cir. 1994) ("In addition to reliability, Rule 702 requires that the expert's testimony must assist the trier of fact."); United States v. Velasquez, 64 F.3d 844, 850 (3d Cir. 1995) ("There must be a valid connection between the expertise in question and the inquiry being made in the case."). The Court will give plaintiff an opportunity to show by competent and admissible evidence that Ms. Fuller has a factual basis for opinions limited to defendants' 2010 and forward disability insurance policies and practices, consistent with the above findings and conclusions.

The existing reports contain mostly irrelevant material, and state opinions without providing any appropriate basis for the opinions. For example, the second report states "Dr. Price's assertions . . . showed a complete disregard for the longstanding doctor patient

relationship between Dr. Brenner and Mr. Leporace." Fuller Second Decl. at 153-156. "Permitting [an expert] witness to offer an opinion unsupported by a sufficient factual foundation would significantly increase the risk of misleading the jury and confusing the issues." Elcock v. Kmart Corp., 233 F.3d 734, 756 (3d Cir. 2000).

In view of the above findings, the Court has determined that the appropriate resolution of defendants' Motion is to strike Ms. Fuller's reports in toto and give plaintiff leave to submit a concise expert report, limited to fifteen pages doubled spaced, for the period 2010 forward, in which Ms. Fuller must state her opinions in separately numbered paragraphs and for each opinion state the type of evidence or expertise on which she relies. Plaintiff need not supply specific testimony or facts, but should give record citations to depositions and other documents in the case, so that the Court and defendants can find the factual source of the opinion in the discovery record in this case. If Ms. Fuller relies on any of her knowledge from having been employed by defendants, she must further state what knowledge, and the source of that knowledge, and cite to some evidence that those practices of defendants continued into the period 2010 and forward.

The Court may thereafter hold an evidentiary hearing to give the parties an opportunity to present testimony from Ms. Fuller on the issue of whether her opinions concerning defendants' practices are admissible.

Ms. Fuller will not be permitted to give conclusory opinions that defendants exercised bad faith in its treatment of plaintiff. "[A]n expert may not give an opinion as to the ultimate legal conclusion that an insurer acted in 'bad faith' in violation of applicable law." Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 410 F. Supp. 2d 417, 422 (W.D. Pa. 2006) (citing Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004)).

This Court determines as a matter of case management and fairness to the parties, that the best process to ensure a fair and expeditious trial is a new report. With a revised report, the record will be more appropriate for direct and cross examination of Ms. Fuller and for the jury reaching a verdict, and for this Court and any appellate court ruling on any post-trial motions that may be filed.

For these reasons, defendants' Motion will be **GRANTED** in part and **DENIED** in part.

O:\CIVIL 11\11-2000 Leporace v. NY Life\11cv2000.memo.expert test.docx