IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH LEPORACE, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| N.Y. LIFE & ANNUNITY CORP., UNUM | : | NO. 11-2000 |
| GROUP CORP., & THE PAUL REVERE | : | |
| INSURANCE CO. | : | |
| Defendants | : | |

## MEMORANDUM RE MOTIONS IN LIMINE

**J. Baylson**                                                                                       **May 7, 2014**

Following extensive briefing and several hearings, the Court has considered and will decide various motions in limine that have been filed in this case and will be discussed in this Memorandum.

**A.     Motions to Exclude Expert Witnesses (ECF 107, 109 & 114)**

Both parties have filed motions to exclude the other party's expert witness, Mary Fuller for Plaintiff, and William Hager for Defendants. As to the contention that each expert witness is not qualified and should not be permitted to testify at all, the Court rejects these contentions and believes that both Fuller and Hager satisfy the Third Circuit's holdings on expert qualifications based on their background and experience with disability insurance claims. Pineda v. Ford Motor Co., 520 F.3d 237, 246-47 (3d Cir. 2008). Of course, the weight of the experts' opinions is for the jury and not for the Court.

1. Mary Fuller

The Court had a lengthy evidentiary hearing at which Ms. Fuller testified, and had prepared the following list of ten topics as a fair summary of her report, which is verbose, repetitive, and argumentative in many respects:

    1.  Failed fully investigate Plaintiff's claim for benefits
    2.  Failed to pay claim while investigated claim for past benefits
    3.  Delay payment until removal of reservation of rights on 7/13/2012
    4.  Delayed peer to peer contact
    5.  Did not advise Plaintiff of his right to demand an IME
    6.  Delayed IME
    7.  Dr. Price caused undue delay
    8.  Quality compliance failure
    9.  Failed notify Plaintiff of factual findings
    10.  Failed to give significant weight to attending physician's opinion

    Two topics referenced in her report are not proper subjects for her expertise. One relates to item 10 that Unum failed to give significant weight to Plaintiff's attending physician's opinion. Plaintiff relies on the Regulatory Settlement Agreement (RSA) for a guideline that requires the insurer to consider medical opinions of a treating physician, and to document reasons for not considering the attending physician's medical opinions. Ms. Fuller may testify to the standard and the lack of documentation applying the standard. But Ms. Fuller may not testify on the strengths or weaknesses of any medical opinions, or offer any testimony on medical evidence as she is not a physician or a qualified medical expert.

    The second topic on which Ms. Fuller may not opine is the setting of reserves. The Court gave Plaintiff's counsel an opportunity to submit any supplemental authority on Pennsylvania law allowing such testimony in a case of this nature and no such authority has been found. The Court believes this evidence would be contrary to the concepts behind competitive and confidential reserve practices of insurance companies and to allow this evidence to be admitted in the bad faith claim based on a disability insurance policy would be improper.

    Plaintiff sought to add two topics to this list. The first was placing an undue burden on Plaintiff to demonstrate his disability. The second is that Defendants failed to follow their own procedures for claims handling. These topics are variations on the opinions already provided and will not be allowed.

2. William Hager

The Court rejects Plaintiff's assertion that because Mr. Hager did not have personal involvement in reviewing disability claims, he cannot qualify as an expert. Mr. Hager only has one expert opinion, that Unum met its obligations. Hager's reliance on Pennsylvania statutory and regulatory positions, NAIC Market Regulation Handbook and various on-line websites is doubtfully relevant, if at all, but he does reference Unum Claims Manual at different points, and the Court believes that this is the most appropriate reference.

The Court has required counsel to cite and document specific standards on which each expert relies from the Unum Claims Handbook or other governing source, and after reviewing these submissions, the Court will admit this opinion testimony.

**B.**     **Admissibility of Pre-2010 Evidence (ECF 106)**

Plaintiff has proposed a large amount of testimony that should be admitted on Unum's practices prior to March 2010, which is the date on which the Court has previously ruled that Plaintiff's claim starts. Defendants have opposed all of this evidence. The Court believes that the pre-2010 evidence is not relevant on the substantive claim but will allow limited reference under FRE 404(b), that Unum considered Plaintiff to be a malingerer when it terminated his benefits in 2005 and referenced this opinion when it began examining the claim for benefits as of March 2010. At the hearing on April 29, 2014, Plaintiff's counsel added arguments that there were a number of references by Defendants' representatives in their notes of Plaintiff being a malingerer, such that Plaintiff believes this evidence should be admitted as probative of Defendants' conduct, in addition to, and separate from admissibility under Rule 404(b) as set forth above. Plaintiff's counsel has identified approximately 25 instances in Unum's file on Plaintiff's claim for reinstatement of benefits after 2010 that refer to his initial diagnosis as a

malingerer. The Court will not exclude this evidence but will only allow limited reference to it for jury consideration, as repeated references would result in a violation of FRE 403. The substantive claim in this case with bad faith from 2010 forward.

C.	**Damages for Emotional Distress (ECF 113)**

The Court expressed dissatisfaction with Defendants' legal brief in support of this motion because it omitted one significant Pennsylvania Supreme Court case, and many other subsequent Pennsylvania and federal lower court cases applying Pennsylvania law. The Court believes that the existence of a decision on a particular subject matter, particularly by the highest court of the state, deserves citation even if counsel contends it is distinguishable. The Court gave leave for counsel to file a supplemental brief, with citations of additional cases that it expects to be discussed fairly and thoroughly. After review of the applicable cases, the Pennsylvania Supreme Court has not definitively ruled on this issue, but has stated that "[e]motional distress damages may be recoverable on a contract where . . . the breach is of such a kind that serious emotional disturbance was a particularly likely result." Birth Ctr. v. St. Paul Companies, Inc., 787 A.2d 376, 385 (2001) (quoting D'Ambrosio v. Pennsylvania Nat. Mut. Casualty Ins. Co., 494 Pa. 501, 431 A.2d 966, 970 n. 5 (1981)); see also Peruggia v. Am. Home Assur. Co., No. 13-CV-6256, 2014 WL 959000, at *4 (E.D. Pa. Mar. 11, 2014) ("Birth Center 'make[s] clear that an insurer's bad faith refusal to settle a claim can give rise to a contract cause of action.'" (quoting Haugh v. Allstate Ins. Co., 322 F.3d 227, 236 (3d Cir. 2003)). Although emotional damages might not be recoverable under § 8371, see Duffy v. Nationwide Mut. Ins. Co., No. 93-1474, 1993 WL 475501 (E.D. Pa. Nov. 10, 1993) (finding the statutory remedies exclusive), the Pennsylvania Supreme Court in Birth Center held "Section 8371. . . does not alter The Birth Center's common law contract rights." Birth Center, 787 A.2d at 385 (holding "an insured could recover

4

compensatory damages based on a contract cause of action, because of an insurer's bad faith conduct."). The Court is of the view that even though Plaintiff did not allege a separate Count for infliction of emotional distress, Pennsylvania law on breach of contract claims allows a plaintiff to recover all damages proximately caused by the defendants' conduct, including claims of emotional distress

**D. Preclude Dr. Brenner Opinions (ECF 111)**

The second motion is to preclude opinions set forth in Dr. Brenner's February 17, 2014 report to Plaintiff's counsel. After argument, it appears that Defendants do not object to Dr. Brenner's report as to Plaintiff's psychiatric and psychological condition, but only to his testimony that Plaintiff suffered "litigation stress" as a result of Unum's activities in denying his claim. The Court has reviewed a number of authorities on this point and believes that a fair resolution of this motion would allow the Plaintiff to present evidence as to Plaintiff's reaction to the conduct of Unum itself in its claims handling practices, only and not Unum's conduct in the litigation that has been instituted by Plaintiff. Neither Plaintiff nor Dr. Brenner will be allowed to testify as to any emotional stress or damage as a result of Plaintiff having filed this lawsuit, or Unum's reaction to the lawsuit itself.

There are two reasons for the Court's ruling. First, a number of cases have clearly rejected evidence of "litigation stress" because there is no question that filing a lawsuit, which is a right every individual has, as long as they have grounds under the law to file claims, is the plaintiff's decision, and imposing additional damages on the defendant for defending against the plaintiff's claims would impair the defendant's right to defend himself. See, e.g., Stoleson v. United States, 708 F.2d 1217, 1223 (7th Cir. 1983) ("It would be strange if stress induced by litigation could be attributed in law to the tortfeasor. An alleged tortfeasor should have the right

to defend himself in court without thereby multiplying his damages."); <u>Zimmerman v. Direct Fed. Credit Union</u>, 262 F.3d 70, 79 (1st Cir. 2001) ("[T]he heavy weight of authority holds that litigation-induced stress is not ordinarily recoverable as an element of damages."); <u>Picogna v. Bd. of Educ. of Twp. of Cherry Hill</u>, 671 A.2d 1035, 1038 (N.J. Super. 1996) (finding "courts are virtually unanimous in holding that litigation-induced stress is not recoverable as a separate component of damages"); <u>Timms v. Rosenblum,</u> 713 F.Supp. 948, 955 (E.D. Va. 1989), aff'd, 900 F.2d 256 (4th Cir. 1990) (denying recovery for litigation-induced stress in legal malpractice case because mental anguish attends all litigation).

The second reason is that Plaintiff himself initiated this lawsuit because he felt that Unum was unfairly handling his claims which was certainly was his right to do.  However, once a lawsuit is instituted, the party becomes subject to the contentions of an opposing party and the rulings of a court.  To allow Plaintiff or Dr. Brenner to testify about the stress of litigation, which may have had nothing to do with Unum's conduct, but rather the conduct of Unum's counsel or the rulings of the Court, would take this case down an unnecessary and dangerous detour.  Although the Court will allow Plaintiff and Dr. Brenner to testify on damages they believe Plaintiff suffered because of Unum's conduct in its claims practices, they may not testify as to any "litigation stress."

An appropriate Order follows.

O:\CIVIL 11\11-2000 Leporace v. NY Life\11cv2000.memo.mot.limine4.29.14.docx